UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MAUREEN P. RICHTER and SCOTT FREEMAN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF DES MOINES,<br><br>Defendant. | CASE NO. C10-461MJP<br><br>ORDER ON SUMMARY JUDGMENT MOTIONS |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 50), and Plaintiffs' two motions for partial summary judgment (Dkt. Nos. 55, 57). Having reviewed the motions, the responses (Dkt. Nos. 62, 64, 67), the replies (Dkt. Nos. 73, 78, 79), Plaintiffs' surreply (Dkt. No. 82), and all related papers, the Court rules as follows: (1) the Court GRANTS in part and DENIES in part Defendant's motion; (2) the Court DENIES Plaintiffs' motion for partial summary judgment as to the procedural due process claim; and (3) the Court RESERVES RULING on Plaintiffs' motion for partial summary judgment as to Defendant's

ORDER ON SUMMARY JUDGMENT MOTIONS- 1

affirmative defenses. The Court finds a decision on these matters suitable for decision without oral argument.

## Background

Plaintiffs Maureen Richter and Scott Freeman pursue a breach of contract claim and Richer pursues three civil rights claims against the City of Des Moines ("the City") arising out their efforts to develop and build a trail from Richter's home to the Puget Sound. Richter is the owner of the property in question, not Freeman. The dispute began in late August 2006, when the City received complaints from neighbors that Freeman, Richter's boyfriend, was grading and clearing a steep bluff on Richter's property to build a trail without permits. (Fredricks Decl. ¶ 11.) Although Richter applied for and ultimately obtained a permit for a trail, she complains that throughout the permitting process she and Freeman were treated unfairly and in violation of Richter's constitutional rights. The Court reviews the salient facts.

After learning of the trail-building activity on Richter's property, the City issued a stop-work order on August 25, 2006. Plaintiffs stopped their work. (Richter Decl. ¶ 7.) The City began a code enforcement proceeding, and Richter started her efforts to obtain permits for her project. (Id. ¶ 8.) The City's code enforcement proceedings ended in a settlement. On June 11, 2007, Freeman, Richter, and the City entered into a "Voluntary Code Compliance Agreement," through which Richter and Freeman agreed to pay $5,000, and the City agreed to drop the code enforcement action. Plaintiffs agreed to obtain permits for their trail project and restore any damage to the bluff. (Dkt. No. 59-1 at 2-3.) Plaintiffs released the City "from any and all claims, damages, causes of action or disputes of any kind or nature that have been or could have been raised based on facts or events transpiring on or before the date of this Agreement." (Id. at 4.) For its part, the City agreed "it shall treat Owners [Plaintiffs] fairly throughout the duration

of this Agreement, shall act in good faith in processing Owners' permit applications, and shall do so in a reasonable and prompt manner." (Id. at 3.)

Following the execution of the Code Compliance Agreement, Richter filed a Type II Land Use Permit Master Application and Development Exception Application on June 28, 2007, to construct a pathway down the bluff to the shoreline. (Richter Decl. ¶ 10.) Richter sought a Development Exception to the City's Environmentally Critical Areas Ordinance, and an exemption from the Shoreline Management Act's substantial development permit requirements. (Id. ¶¶ 10-11.) The City acknowledged receipt of the complete application on July 19, 2007. (Dkt. No. 53 at 74.) After the City requested and obtained additional information, it issued comments on the Development Exception and asked for more information on September 21, 2007. (Id. at 79-84.) It was not until January 22, 2008 that the engineering firm Plaintiffs retained submitted a response. (Id. at 86-97.) On April 24, 2008, the City denied the Development Exception Application. (Dkt. No. 53-1 at 2-7.)

Richter appealed the City's denial to a Hearing Examiner, who denied in part and granted in part the appeal on August 22, 2008. (Dkt. No. 59-1 at 14-37.) The Hearing Examiner only reversed the City's decision to apply its Environmentally Critical Areas Ordinance to Richter's proposal. (Id. at 34-35.) The Hearing Examiner found this was improper in light of a Washington Supreme Court opinion that held a city's Shoreline Master Plan, not its Critical Areas Ordinance applied to permits like the one Richter sought. (Id.) Yet when the City denied Richter's permit in April, 2008, the Supreme Court's opinion had not issued—it was issued on July 31, 2008, after the permit denial. The Hearing Examiner found the City's decision in all other respects was not subject to reversal. (Id. at 35.)

On September 16, 2008, Richter appealed the Hearing Examiner's ruling by filing a complaint in King County Superior Court seeking relief under the Land Use Petition Act ("LUPA"). She also requested damages and declaratory relief through five claims for: (1) violations of RCW 69.40 (2) violations of substantive and procedural due process, (3) an unconstitutional taking, (4) illegal search and seizure, and (5) declaratory relief the City violated the 2007 Agreement. (Dkt. No. 2-2 at 15-16.) On January 22, 2010, the parties settled the LUPA portion of the case, while preserving the claims for damages. (Dkt. No. 59-1 at 42-45.)

Several terms of the 2010 agreement are relevant to Defendant's summary judgment on the breach of contract claim. Richter agreed to "dismiss the LUPA petition portion of her case as filed" on September 16, 2008, but that "[a]ny other remaining causes of action are not affected by the agreement." (Dkt. No. 59-1 at 43.) The parties otherwise agreed that:

> this Settlement Agreement is fully integrated and constitutes the complete and final agreement between the parties with regard to the LUPA action referenced herein. This Settlement Agreement shall supersede and replace any outstanding or unperformed obligation as may be required in the "Voluntary Correction and Code Compliance Agreement" previously executed between the parties on June 11, 2007.

(Id.)

On February 8, 2010, the parties filed a stipulation in Superior Court dismissing the LUPA petition and reinstating Richter's § 1983 claims. (Dkt. No. 59-1 at 47-48.) Defendant removed the action to this Court on March 18, 2010. (Dkt. No. 1.) Plaintiffs filed an amended complaint, clarifying that Richter pursues claims under § 1983 for violations of procedural and substantive due process, and equal protection, and that Richter and Freeman jointly pursue a breach of contract claim. Richter claims the City violated her substantive due process rights by acting unreasonably and arbitrarily when processing her permit applications. Richter also argues that the permitting appeal process violated her procedural due process rights because she was not

1 | allowed to present or appeal her permit applications to a neutral arbiter.  Richter's equal
2 | protection claim turns on the allegation that the City treated the City Parks Department's
3 | application to expand the Des Moines Creek Trail more favorably than her application. Richter
4 | and Freeman lastly argue that the City violated the 2007 Agreement by failing to treat Plaintiffs
5 | fairly and in good faith and process the permit applications in a prompt manner.

The pending motions are three fold.  The City seeks dismissal of all of Plaintiffs' claims. Richter seeks partial summary judgment granting her procedural due process claim, and Plaintiffs jointly seek summary judgment dismissing all of Defendant's affirmative defenses. The parties have levied several motions to strike portions of declarations submitted in support of the briefing.

**Analysis**

A.  Standard

Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  If the moving party makes this showing, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24

(1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

B.   Procedural Due Process

Because Richter does not have a protectible property interest in her proposed trail construction project she cannot pursue a procedural due process claim related to her permit applications.

The Ninth Circuit has held that procedural due process claims based on discretionary decisions related to land use permit applications cannot be maintained. In Bateson v. Geisse, the court rejected a procedural due claim brought by a man who applied for, but did not obtain a minor plat approval that would have allowed him to construct a large building on property he owned. 857 F.2d 1300, 1305 (9th Cir. 1988). The court explained that "[t]o state a procedural due process claim, Bateson must establish that he had a protectible property interest in his proposed minor plat application and, if so, that he was denied this property right without the process that was due under the circumstances." Id. The Court explained that "[a] property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as a state or federal law." Id. (quotation omitted). This rule is an offshoot of the Supreme Court's ruling in Board of Regents v. Roth, 408 U.S. 564 (1972). The court in Bateson concluded that the plaintiff could show no state or local law that entitled him to a minor plat and found instead that the local authority had discretion whether to grant such a request. The court concluded that `where the agency has ultimate discretion over the decision to issue a permit, there is no entitlement. Bateson, 857 F.2d at 1305.

Bateson squarely forecloses Richter's procedural due process claim. Richter has not shown any local or state law entitling her to a permit to develop a trail on a steep slope down to the water. The City has discretion whether to give the permit at all. Richter suggests that one City employee testified that Richter was entitled to the permit. This is not an accurate recitation of the record. Richter inaccurately states that a "Grant Fredricks [a city employee] understood and testified that Richter was entitled to a trail." (Dkt. No. 9 at 6 (citing Dkt. No. 71-1 at 30).) In actuality, Fredricks only testified that "Ms. Richter and her family need a safe way to get up and down the trail." (Dkt. No. 71-1 at 30.) The Court finds that Richter lacks any protectible property interest in the permit she applied for and that her procedural due process is fatally flawed.

Richter argues that the Court should apply a different legal regime and find that the Constitution guarantees her an absolute right to use her property as she sees fit. The cases Richter relies on do not support her position. Richter first invokes Harris v. County of Riverside, 904 F.2d 497 (9th Cir. 1990), which involved a procedural due process claim to a rezoning decision that deprived the plaintiff of the ability to run an ATV rental business on his property. On this ground alone the case is distinguishable from Richter's claim, as it involved affirmative governmental action that deprived the land owner of the commercial use of his land. Richter's claim involves only a permit application to develop a trail, not any affirmative action on the government to deprive her of her use of property. She has not shown any entitlement to the permits at issue. The Court also notes that Harris applied the framework in Roth to determine whether the plaintiff had a protectable property interest. Id. at 501. Thus, Richter's assertion that the Roth framework is inapplicable to her claims is betrayed by the very cases she relies on. The Court rejects Richter's argument on this issue.

1    Richter's reliance on Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., is

2  also inadequate to sustain her claim. 509 F.3d 1020 (9th Cir. 2007). In Action Apartment, the

3  Ninth Circuit dealt with a substantive due process claim and held the plaintiffs had "a

4  constitutionally protected property interest in their right to devote [their] land to any legitimate

5  use." Id. at 1026 (quotation omitted). The case cited with approval Harris, and held that an

6  arbitrary deprivation of the use of one's land for a legitimate purpose was unconstitutional.

7  Action Apartment is inapposite for two reasons. First, it involved a substantive due process

8  claim, not a procedural due process claim. Second, it involved an affirmative deprivation of use

9  of the land for a commercial purpose, not a denial of a permit to which there is no entitlement.

10 Here, Richter has not shown any deprivation of the use of her land vis-à-vis an affirmative

11 government action. The case is distinguishable and of no aid to Richter.

12   Even if the Court were to find that Richter has a protectible property interest in building a

13 trail, she has not shown she was denied due process. Richter argues that she was not given a

14 hearing before an impartial tribunal when she appealed the City's permitting decision. (Dkt. No.

15 57 at 19 (quoting Clements v. Airport Auth. of Washoe County, 69 F.3d 321, 333 (9th Cir.

16 1995)).) Richter argues that because the Hearing Examiner had to apply a deferential standard of

17 review to the City's decision, he was biased. (Dkt. No. 57 at 12-13.) This does not show that

18 the examiner was biased or that Richter was not given an impartial tribunal. Richter erronesouly

19 relies on Concrete Pipe & Prods. v. Constr. Laborer Pension Trust, to argue that the Hearing

20 Examiner was biased. 508 U.S. 602 (1993). That case is distinguishable because the arbiter in

21 Concrete Pipe was also an ERISA fiduciary to one of the parties of the dispute. There the arbiter

22 had an actual bias, and was not merely applying a deferential standard of review. Here, Richter

23 has only mustered a thoroughly untenable argument that because the Hearing Examiner applied

24

deference to the City's initial decision, he was biased. The Hearing Examiner in no way evidenced a bias and merely applied a standard of review that is both common and permissible. This is not a violation of due process.

The Court DISMISSES Richter's procedural due process claim and GRANTS Defendant's motion on this issue.

C. <u>Substantive Due Process</u>

Richter cannot pursue a substantive due process claim because she has failed to show Defendant engaged in any irrational or arbitrary conduct.

Richter's challenge to the permitting decision and appeal process places a heavy burden on her to show irrational and arbitrary conduct. Challenges to permitting decisions that affect only the use of one's property in a particular fashion do not squarely implicate the fundamental right of property ownership. See <u>Halverson v. Skagit County</u>, 42 F.3d 1257, 1262 (9th Cir. 1994). "When executive action like a discrete permitting decision is at issue, only egregious official conduct can be said to be arbitrary in the constitutional sense: it must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." <u>Shanks v. Dressel</u>, 540 F.3d 1082, 1088 (9th Cir. 2008) (quotations omitted). Where "governmental action . . . does not impinge on fundamental rights, 'we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did.'" <u>Halverson</u>, 42 F.3d at 1262 (quoting <u>Wedges/Ledges of California, Inc. v. City of Phoenix</u>, 24 F.3d 56, 66 (9th Cir. 1994)). Richter here has an "exceedingly high burden" to show that the City "behaved in a constitutionally arbitrary fashion." <u>Shanks</u>, 540 F.3d at 1088.

Richter has failed to present sufficient material facts that might sustain her substantive due process claim. Richter's opposition to the City's motion states that "Richter has acknowledged that those [facts] underlying her substantive due process claim are subject to extensive dispute." (Dkt. No. 67 at 18 (citing Dkt. No. 57 at 2:3-7).) Yet Richter fails to provide much detail as to what disputed facts those are. She points to her expert's conclusion that the City's internal emails "raise the probability of a staff perspective to punish Richter instead of expediting stabilization of the hillside through granting of the permit application." (Geyer Decl. at 8.) She also unilaterally claims the decision did not consider technical engineering details and that the denial of the permit was "improperly based on the 'illegally performed' work and the false assumption that the site contained wetlands." (Dkt. No. 67 at 8.) This evidence does not rise to the level of a violation of substantive due process. It is similar to Kawaoka v. City of Arroyo Grande, where the court held that one declaration asserting government action was pretext for discrimination was inadequate to show a violation of substantive due process. 17 F.3d 1127, 1237 (9th Cir. 1994). And it is unlike Bateson, where the plaintiff submitting all required paperwork but was denied the permit because the city council arbitrarily refused to process the application. 857 F.3d at 1303. Every fact pointed to by Richter as arbitrary has a legitimate and reasonable explanation. The delay that was incurred was at least partially the result of Plaintiff's own delay and the reasons for denial were justified, as the Hearing Examiner found. The only ground on which the Hearing Examiner found the City to have erred was created by an after-the-fact change in the law. The facts suggesting the City had any animus towards Richter are conjectural and the conclusion of an expert. This is not sufficient to meet Plaintiff's extremely high burden to show arbitrary and irrational conduct and it does not raise a

genuine issue of material fact.  See Shanks, 540 F.3d at 1088.  Richter has failed to meet her high burden the Court GRANTS the motion and DISMISSES the substantive due process claim.

C. <u>Equal Protection</u>

Richter's equal protection claim fails because she had not demonstrated how she is similarly situated to the City Parks Department.

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194–95 (9th Cir.1998).  "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).  The critical component at issue here is whether Richter is similarly situated to the City Parks Department.  She is not.

Richter has failed to explain how she is similarly situated to the City Parks Department. Richter has essentially ignored her burden and stated that "the obvious harsh treatment of Richter compared with the City's favorable treatment of the Des Moines Creek Trail is sufficient to demonstrate a triable issue on the equal protection claim."  (Dkt. No. 67 at 21.)  She provides little to no analysis of how or why she is similarly situated to the City Parks Department and the Court finds several reasons why she is not.  First, the City Parks Department is not an individual landowner, but is a municipal actor.  Second, the trail project the Parks Department pursued was to expand an existing gravel road, not to create new path on private property where none had existed. (See Dkt. No. 71-2 Ex. 17.)  The two projects are dissimilar in scope, size, impact, and

purpose.  Third, the City Parks Department had not engaged in illegal trail construction before applying for its permit.  Fourth, the City provided all of the proper and necessary permits applications, whereas Richter had failed to provide all of the necessary paperwork in her initial application.  Moreover, like the City Parks Department, Richter did obtain approval of her trail once she complied with all of the relevant permitting requirements.  Richter is not similarly situated to the City Parks Department, and her equal protection claim cannot move forward.

The Court GRANTS Defendant's motion on this issue and DISMISSES the equal protection claim.

D. Breach of Contract

Plaintiffs pursue a breach of contract claim based on the theory that the City did not treat them fairly and in good faith and/or process their permit applications in a reasonable and prompt manner.  The City has failed to demonstrate a basis on which to dismiss Richter's breach of contract claim, but has successfully shown that Freeman lacks standing to pursue his claim.

The City incorrectly seeks dismissal of the breach of contract claim on the theory that Plaintiff settled the claim in 2010.  The 2010 settlement agreement specifically preserved for Richter her non-LUPA "damages" claims.  Richter agreed to "dismiss the LUPA petition portion of her case," but the parties agreed that "[a]ny other remaining causes of action are not affected by the agreement." (Dkt. No. 59-1 at 43.)  One of the causes of action was Richter's request for declaratory relief that the City breached the 2007 Agreement.  Richter thus did not waive the claim.  The City makes the strained argument that another provision in the 2010 settlement extinguished the breach of contract claim.  But that portion of the Agreement only states "[t]his Settlement Agreement shall supersede and replace any outstanding or unperformed obligation as may be required in the 'Voluntary Correction and Code Compliance Agreement' previously

executed between the parties on June 11, 2007." (Id.) To read this provision as extinguishing the breach of contract claim would require the Court to ignore the plain language of Section III(2) of the Agreement. The Court rejects this invitation to error and DENIES the motion to dismiss the claim on this theory.

The City has correctly argued that Freeman's breach of contract claim must be dismissed. Freeman is one of the signatories to the 2007 Agreement and is defined equally as an "owner," although he does not own the land in question or apply for the land use permits. The City agreed it "shall treat Owners fairly through the duration of this Agreement, shall act in good faith in processing Owner's permit applications and shall do so in a reasonable and prompt manner." (Dkt. No. 59-1 at 3.) The only obligation the City had to Freeman was to dismiss the code compliance action against him, and he has not alleged that he was mistreated on this issue. Without any support, Freeman argues that the City owed Freeman the same level of good faith and prompt attention to the building permits as was owed to Richter because contract rights are joint. (Dkt. No. 67 at 23.) This argument is unpersuasive. The only duty owed to Freeman as part of the 2007 Agreement was to drop the code enforcement proceeding against him and treat him fairly in so doing. The City owed him no obligation as to the permits because he was not a permit applicant or an owner of the land. Freeman has no viable claim of breach of the 2007 Agreement. The Court GRANTS the City's motion on this issue and DISMISSES Freeman's breach of contract claim—his only claim in this case.

E.      Motions to Strike

The parties have both asked the Court the strike a number of declarations or portions of declarations submitted with the briefs in this matter. In most instances, both parties simply provide a laundry-list of objections with no argument explaining their position. Such motions to

1 strike are not adequate and it is unreasonable to ask the Court to guess at the reasons that might
2 form the basis of a valid order striking materials.  The Court DENIES the conclusory and
3 unexplained motions to strike.  (Dkt. Nos. 67 at 23-34 and 73 at 12-13.)  The Court addresses
4 only those portions of the motions to strike that provide a reasoned and detailed basis for relief.
5      The Court agrees with Plaintiffs that Jason Sullivan, Robert Ruth, Laura Techico, Grant
6 Fredricks and Patricia Bosmans were not timely disclosed as experts.  (Dkt. No. 82.)  The time to
7 disclose experts was September 19, 2011.  (Dkt. No. 38.)  Defendant admits that it did not
8 disclose these witnesses as experts until January 12, 2012.  (Dkt. No. 73 at 12 n.20.)  The Court
9 thus places no reliance on any statements made by any of these persons in an expert capacity.
10 However, the Court finds that most of the statements in these declarations are not made in an
11 expert capacity.  For example, nothing in Robert Ruth's declaration is made in an expert capacity
12 and the Court declines to strike his declaration.  The same is true of Laura Techico's declaration
13 that does not contain expert opinion, but instead contains her own lay observations and
14 statements.   The Court does STRIKE Jason Sullivan's declaration, as it contains opinions that
15 appear only to be made based on his capacity as an expert and he was not timely disclosed as an
16 expert. (Dkt. No. 76.)
17      Plaintiffs also ask the Court to strike portions of Bosman's third declaration as being a
18 means of circumventing the page limitations.  (Dkt. No. 82 at 3.)  The Court DENIES the motion
19 to strike Bosman's third declaration, as it does not include improper legal argument as a means
20 to circumvent the page limitations.  The Court separately notes that Defendant has repeatedly
21 used an excessive number of footnotes as a means of avoiding the page limitations imposed by
22 the Local Rules.  If a party wishes to raise any argument it must do so in the body of the brief,
23
24

not hidden in footnotes.  The Court admonishes both sides not to use footnotes to avoid the page limits.

Plaintiffs lastly ask the Court to strike a new argument the City purportedly raised for the first time on appeal.  (Dkt. No. 82 at 4.)  The Court has not considered that argument in reaching its decision and therefore DENIES the motion to strike it.

F.       Motion for Partial Summary Judgment as to Affirmative Defenses

Plaintiffs move for partial summary judgment to dismiss Defendant's affirmative defenses.  The Court RESERVES RULING on this motion.  In light of the Court's ruling dismissing Richter's federal claims, the Court does not wish to provide advisory rulings on affirmative defenses the City no longer wishes or needs to pursue.  Accordingly, the Court asks the City to provide the Court with a status update as to which affirmative defenses it intends to pursue.  The update may not exceed 3 pages, must contain no further argument, and must be filed within 15 days of entry of this order.  No response is permitted.  Once the Court is informed of the affirmative defenses that remain alive, it will provide a ruling on Plaintiffs' motion.

**Conclusion**

Richter has failed to show any dispute of material fact precluding the Court from granting Defendant's motion for summary judgment to dismiss her federal claims.  Richter has not shown a right to procedural due process, she has not shown any irrational or arbitrary conduct sufficient to show a substantive due process claim, and she has failed to show any similarly situated individual to sustain her equal protection claim.  The Court GRANTS Defendant's motion as to these claims and DISMISSES them.  The Court DENIES Richter's motion for partial summary judgment on her procedural due process claim.

Richter has demonstrated a dispute of fact exists over whether the City breached the 2007 Agreement. This claim may proceed. However, Freeman has not demonstrated that any of the terms of that Agreement have been breached as to him. His claim is DISMISSED. The Court therefore GRANTS in part and DENIES in part Defendant's motion for summary on this issue.

The Court RESERVES RULING on Plaintiffs' motion for partial summary judgment as to Defendant's affirmative defenses. The Court orders Defendants to submit a status update within 15 days of entry of this order explaining which affirmative defenses it intends to pursue in the absence of Plaintiffs' federal claims. Once it receives this update, the Court will then decide the motion for partial summary judgment.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 1st day of March, 2012.

_____
Marsha J. Pechman
United States District Judge